THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MARLENE PARTEE, Defendant-Appellee.

First District (4th Division)    No. 76-1192

Opinion filed August 11, 1977.—Rehearing denied September 20, 1977.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Charles I. Schwartz, of Chicago, for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Marlene Partee, was indicted for armed robbery, in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). A jury trial was held in the circuit court of Cook County and a mistrial was declared on August 8, 1975. On May 24, 1976, defendant's motion to dismiss the indictment and to bar further prosecution of the defendant on the ground of double jeopardy was granted. The State appeals from the order dismissing the indictment pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)).

The issues presented for review are (1) whether the circumstances before the trial court supported the termination of the defendant's trial by a mistrial, and (2) whether the trial court subsequently improperly

dismissed the defendant's indictment and barred further prosecution on the indictment.

The defendant was indicted for the February 12, 1974, armed robbery of Bobbie Wandick. She was tried by a jury before the Honorable Earl E. Strayhorn from July 31 to August 8, 1975. On the sixth day of the trial, closing arguments were heard, the jury was instructed and then retired to decide the issue. The record indicates that while the jury deliberated four notes were received by Judge Strayhorn from the jury foreman. The first note stated, "We need the transcript of the defendant's testimony." In response, Judge Strayhorn sent a handwritten note advising the jurors as follows:

> "You will have to use your collective memory as to what each witness said, especially the defendant who testified as recently as yesterday."

The court subsequently received a second note from the foreman which read, "We can't agree on a unanimous verdict." The third note read, "What happened to our first note? We are still deadlocked. No hope of unanimous verdict. Send word."

The jury returned to the courtroom and the court gave the jurors a *Prim* instruction (see *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601). Again, the jury retired for further deliberation. Finally, a fourth note was received by the court. This note stated:

> "Still hopeless. It seems that there are those of us who don't want to discuss the case any further and there is nothing that can be done further. There is disagreement as to whether she left at the same time or not. It would be helpful to see her testimony."

The defense counsel commented that the jury had retired at 11:30 that morning, and that at 4:15 in the afternoon no verdict had been returned. He objected to the jury being held for additional deliberation, contending that under the circumstances locking up the jury would be coercive and force the jurors to return a guilty verdict. The objection was overruled. The jurors then returned to the courtroom and were informed by the court that because the court reporter and the defendant were not available at that time the defendant's testimony would not be read until the following morning. The jury was then ordered sequestered and the court adjourned.

On August 8, 1975, the court convened at 10:30 a.m., and the defendant was not present. The defendant had been ordered to be present in court at 9:30 a.m. The defendant's father testified that he had taken Marlene home the previous evening, and had told her that he would come for her the following morning and take her to court. He explained that when he arrived at defendant's home that morning, her mother informed him that

Marlene was not at home and that she had not seen Marlene since the previous morning. The witness stated that he then went to the homes of defendant's brother and sisters looking for her. Eventually he gave up the search and came to court.

Defendant's counsel next requested that the court grant him time to search for the defendant. Judge Strayhorn refused and stated that he intended to issue a warrant. The jury was then returned to open court. They had failed to reach a verdict. Judge Strayhorn explained to the jurors that because the defendant was not present her testimony would not be read in open court, and the court had no alternative other than to direct that a mistrial be declared. The judge noted that neither defendant's counsel nor her family knew of her whereabouts. He then ordered defendant's bond forfeited, a warrant issued, and bond on the warrant set at $25,000. A mistrial was declared and the jury was dismissed. Defense counsel made no objection to the mistrial.

The case was recalled twice following the mistrial. On the second recall, defense counsel informed the court that defendant was present in the courtroom. She arrived at approximately 11:50 a.m. and was sworn in. She testified that she had awakened at 9:50 that morning, left her home at 10:30 a.m., and traveled to court by bus. The court then reinstated the cause, the defendant was taken into custody, and bail was set at $25,000. The court vacated the bond forfeiture warrant. A date for further proceedings was not set in order that defendant might submit a written motion for dismissal of the indictment.

An emergency petition for reduction of bond and other and further relief was submitted on defendant's behalf. The petition alleged that the mistrial was an abuse of discretion, deliberately prejudicial to defendant's rights, and that the mistrial raised serious quetions of double jeopardy. Judge Strayhorn denied all relief requested by the defendant.

On May 12, 1976, defendant filed a petition for relief pursuant to sections 3—4(a)(3) and 114—1(a)(2) of the Criminal Code of 1961 and the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, pars. 3—4(a)(3), 114—1(2)). The petition alleged that defendant's trial was improperly terminated by the mistrial that was declared when the defendant failed to appear in court. The petition alleged that the trial court erred when it failed to follow section 115—4.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 115—4.1), in that it did not adjourn the cause for two successive days following the defendant's absence and then allow deliberations to continue. And further, that the trial court, instead of using its contempt powers, acted without knowledge of the reason for defendant's nonappearance and improperly terminated the jury's deliberations on its own motion, for a reason unconnected to the ability of the jury to reach a verdict. The

prayer was that an order dismissing the indictment and barring further prosecution of the defendant be entered.

On May 24, 1976, the above petition was heard before the Honorable Robert C. Buckley. After hearing the arguments, Judge Buckley granted defendant's motion and allowed the relief requested. He stated:

"What really gets to me is here this jury is out and they can't find her guilty, and now we are saying okay, we are going to discharge you and give them another shot."

We find that the declaration of a mistrial by the trial court was proper and justified under the circumstances, and that the motion court improperly dismissed the defendant's indictment and barred further prosecution on the indictment.

Where a trial proceeding has ended in a mistrial, Illinois courts have held under a variety of circumstances that a second trial does not give rise to a claim of double jeopardy. (*People v. Laws* (1963), 29 Ill. 2d 221, 224-25, 193 N.E.2d 806, 808.) Section 114—1(a)(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—1(a)(2)), provides:

"(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

\* \* \*

(2) The prosecution of the offense is barred by Sections 3—3 through 3—8 of the [Criminal Code] \* \* \*."

Section 3—4(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 3—4(a)(3)) provides:

"(a) A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:

\* \* \*

(3) Was terminated *improperly* after the jury was impaneled and sworn \* \* \*." (Emphasis added.)

Thus, whether a second trial after a prior trial has ended in mistrial constitutes double jeopardy, depends on whether the court acted properly in declaring the mistrial. See *Laws*, at 225.

■■ A court may properly discharge a jury from giving any verdict or declare a mistrial, without giving rise to a claim of double jeopardy, whenever in the court's opinion there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. (*United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579; *People v. Bean* (1976), 64 Ill. 2d 123, 127-28, 355 N.E.2d 17, 19; *People v. Laws* (1963), 29 Ill. 2d 221, 225, 193 N.E.2d 806, 808; *People v. Mays* (1962), 23 Ill. 2d 520, 524, 179 N.E.2d

654, 656; *People v. DeFrates* (1946), 395 Ill. 439, 446, 70 N.E.2d 591, 594.) The courts are to exercise sound discretion in determining when a mistrial should be declared or a jury discharged, and such a discharge gives no right of exemption to the prisoner from again being put upon trial. (*Bean,* at 128; *Mays,* at 524.) The law is well established that where a trial court, in the absence of an abuse of discretion, discharges a jury because of its failure to reach a verdict, the constitutional prohibition against double jeopardy does not bar a new trial. (*Bean,* at 128; *People v. Nilsson* (1970), 44 Ill. 2d 244, 246, 255 N.E.2d 432, 433.) The law has invested trial courts with great discretion in these matters, In *People v. DeFrates* (*DeFrates,* at 446), wherein after 3 days of trial the jury was discharged when it had deliberated only 45 minutes, the supreme court held:

> "It is apparent the court acted rather hastily but we hardly see how the record justifies the assertion that the trial court abused its discretion in the premises, nothing appearing to show such abuse. A court of review will not presume an abuse of discretion. It has long been recognized by this court and elsewhere that a court of justice is invested with the authority to discharge a jury from giving any verdict whenever, in the court's opinion, there is manifest necessity for such act or the ends of public justice would otherwise be defeated, and that such is within the discretion of the trial court and is not subject to review in the absence of abuse of discretion. [Citations.]"

■■ In the instant case, an examination of the record does not reveal that the trial court acted in abuse of its discretion when it terminated the defendant's trial. Further, it is not apparent that the trial court was motivated by any purpose unrelated to the inability of the jury to reach a verdict. The jury foreman sent four notes to the trial judge. Each note indicated that the jury was having difficulty in reaching a verdict. The second note informed the court that the jury could not reach a unanimous verdict. The third note stated, "We are still deadlocked. No hope of unanimous verdict." Although the fourth note indicated that it might be "helpful to see her testimony," it also stated that the situation was "still hopeless." Defendant at this point moved for a mistrial, and the trial court would have been within its authority had it allowed the motion. It is proper for a court to discharge a jury when it is apparent that the jury is hopelessly deadlocked. (*Bean,* at 127; *Mays,* at 524.) However, the court, in its discretion, sequestered the jury so that defendant's testimony could be read to the jurors the next morning. When the defendant did not appear in court the following morning, a Friday, the court was not required to lock up the jury for the weekend, with the mere hope that deliberations might effectively continue on Monday. Under the circumstances, the trial court was fully justified in discharging the jury

due to its apparent inability to reach a unanimous verdict. Reprosecution of the defendant is therefore not barred.

Since we find that the trial court acted within its authority and discretion when it declared the mistrial, we need not consider defendant's argument that the provisions of section 115—4.1 (Ill. Rev. Stat. 1975, ch. 38, par. 115—4.1) became mandatory upon the trial court when defendant absented herself from the courtroom.

For the foregoing reasons, the order dismissing the indictment is reversed, and the cause remanded for a new trial.

Reversed and remanded.

LINN and ROMITI, JJ., concur.