2022 IL App (1st) 200319-U

FIFTH DIVISION
MARCH 25, 2022

No. 1-20-0319

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 15970 |
| | ) | |
| GREGORIO REYNA, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Connors concurred in the judgment.

ORDER

¶ 1   *Held*:  The trial court did not err by summarily dismissing the defendant's postconviction petition.

¶ 2   On November 13, 2018, the State charged the defendant-appellant, Gregorio Reyna, by information with two counts of attempted first degree murder, five counts of aggravated domestic battery, and two counts of aggravated battery for stabbing his father and brother with a knife. On June 11, 2019, Mr. Reyna pled guilty to one of the aggravated domestic battery counts in exchange for a recommended sentence of 12 years' imprisonment. On that same day, the circuit court

accepted his negotiated guilty plea and sentenced Mr. Reyna to 12 years' imprisonment. Mr. Reyna did not file a direct appeal. On October 1, 2019, Mr. Reyna filed a *pro se* postconviction petition alleging, in relevant part, that he received ineffective assistance of counsel prior to his guilty plea proceedings. On December 15, 2019, the circuit court summarily dismissed Mr. Reyna's petition as frivolous and patently without merit. Mr. Reyna appealed the circuit court's dismissal. On appeal, he argues that the circuit court erred by summarily dismissing his postconviction petition. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                              BACKGROUND

¶ 4     On November 13, 2018, the State charged Gregorio Reyna by information with nine criminal counts, which included two counts of attempted first degree murder (counts I and II), five counts of aggravated domestic battery (counts III through VII), and two counts of aggravated battery (counts VIII and IX). The charges arose out of an incident in which Mr. Reyna stabbed his father and brother with a knife. On June 11, 2019, Mr. Reyna pled guilty to aggravated domestic battery (count V) in exchange for 12 years' imprisonment. That charge alleged that Mr. Reyna stabbed his brother, Rene Olvera, about his body. The plea included a factual basis, which stated:

> "[O]n the date of October 17th of 2018, [Mr. Reyna] was at his home located at [Mr. Reyna's address], along with his father Gregorio Olvera, his mother Ignacia Olvera, his brother Rene Olvera, and other family members. [Mr. Reyna] entered into Gregorio [Olvera's] and Ignacia's bedroom with a large knife, speaking incoherently. Gregorio [Olvera] and his wife attempted to flee the room. [Mr. Reyna] followed [them] and at that time stabbed Gregorio [Olvera] once in the neck causing a laceration to his neck. [Mr. Reyna's] brother Rene Olvera, the victim here, [], came to his father's aid when [Mr.

Reyna] then stabbed him once in the lower torso causing a deep laceration to Rene's torso. Rene Olvera was transported to Mount Sinai where his spleen was removed, and he was diagnosed with bleeding in his chest."

Mr. Reyna, via his counsel, stipulated to the factual basis as recited by the State. After admonishing Mr. Reyna fully and asking him the requisite questions, the trial court accepted Mr. Reyna's guilty plea.

¶ 5 Due to Mr. Reyna's criminal background, the State informed the trial court that his offense made him eligible as a Class X offender, changing the sentencing range from 3 to 7 years' imprisonment to 6 to 30 years' imprisonment. When the court asked if Mr. Reyna wanted to say anything before it imposed sentence, Mr. Reyna made a statement to his family, which in part forms the basis of this appeal. He stated:

"I want to tell my family, you know, that when I did the crime, you know, I wasn't in the right state of mind. I don't remember doing it. You know, I take medication. I do PCP. I get blackouts. I don't remember nothing or what happened, nothing what happened."

The trial court responded, "I can understand that. You still wish to maintain this plea of guilty?" Mr. Reyna answered, "Yes." The court then accepted the plea agreement of the parties and sentenced Mr. Reyna to 12 years' imprisonment with 4 years of mandatory supervised release. The trial court also entered restraining orders for the victims and their household members against Mr. Reyna.

¶ 6 The trial court admonished Mr. Reyna about his right to appeal the judgment; Mr. Reyna chose not to exercise that right. Thus, there was never a direct appeal in this case.

¶ 7    On October 1, 2019, Mr. Reyna filed a *pro se* postconviction petition, which is the subject of this appeal. His petition alleged that his trial counsel was ineffective for not investigating a voluntary intoxication defense. Specifically, his postconviction petition stated that his trial counsel told Mr. Reyna that, though Mr. Reyna was under the influence of alcohol and phencyclidine (PCP), Mr. Reyna still "knew he wanted to commit his crimes." Mr. Reyna claimed that that statement was unethical and was the reason that his trial counsel did not build a viable defense. He also argued his trial counsel did not provide the court with a pretrial investigative report; did not file pretrial motions; nor subpoena witnesses to testify on Mr. Reyna's behalf. Further, he alleged that his trial counsel coerced him into pleading guilty by telling his sister to convince him to make the guilty plea. Mr. Reyna's petition also stated that his trial counsel failed by not advocating for him to get a drug or alcohol treatment sentence alternative instead of imprisonment. Finally, the postconviction petition claimed that the trial court erred by not allowing Mr. Reyna to be appointed a new public defender after he expressed a desire to fire his trial counsel, who was also a public defender.

¶ 8    On December 5, 2019, the trial court dismissed Mr. Reyna's postconviction petition in a written order. The court's order held that Mr. Reyna had waived his arguments due to pleading guilty to the offense. Moreover, the court stated that even if the arguments were not waived, his allegations were "bald, conclusory," and without merit. Mr. Reyna subsequently appealed the trial court's dismissal of his postconviction petition.

¶ 9                                          ANALYSIS

¶ 10   We note that we have jurisdiction to consider this matter, as Mr. Reyna filed a motion to file a late notice of appeal, which this court granted. Ill. S. Ct. R. 606(c), 651(a) (eff. July 1, 2017).

¶ 11    Mr. Reyna contends on appeal that the trial court erred by summarily dismissing his postconviction petition, which he asserts had a meritorious claim of ineffective assistance of counsel. Specifically, he argues that he was prejudiced by his trial attorney's failure to investigate a viable defense of voluntary intoxication.

¶ 12    We note that, as an initial matter, the State claims Mr. Reyna's arguments on appeal are waived or forfeited.[1] First, the State contends that by pleading guilty, Mr. Reyna waived all non-jurisdictional errors, including constitutional ones. The State next argues that Mr. Reyna forfeited the issue of ineffective assistance of counsel since he did not file a direct appeal. We will take each argument in turn.

¶ 13    Regarding the State's contention as to waiver, we find this argument is without merit. Both our supreme court and the United States Supreme Court have allowed criminal defendants to challenge the judgment of their conviction and sentence following a guilty plea, including on the basis of ineffective assistance of counsel. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[A] defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). See also *People v. Brown*, 2017 IL 121681, ¶ 26 (stating a defendant must show that but for trial counsel's errors, the defendant would have gone to trial and been better off). Thus, even though Mr. Reyna pled guilty, he did not waive his right to subsequently argue ineffective assistance of counsel.

¶ 14    Next, the State argues that Mr. Reyna forfeited the issue of ineffective assistance of counsel since he failed to file a direct appeal. Stated another way, the State asserts that because Mr. Reyna

---

[1]"Waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right." *People v. Elizondo*, 2021 IL App (1st) 161699, ¶ 81.

could have raised his ineffective assistance of counsel argument in a direct appeal, but he did not, he cannot now raise that argument in a postconviction proceeding. However, our supreme court established in *People v. Rose*, 43 Ill. 2d 273, 279 (1969), that the failure to file a direct appeal does not impact the constitutional rights of a defendant to file a petition for postconviction relief. See *People v. Brooks*, 371 Ill. App. 3d 482, 485 (2007) (stating that "the Postconviction Act provides a separate remedy, whose availability is not contingent upon exhaustion of another remedy"). As such, we find that Mr. Reyna did not forfeit his right to raise the issue of ineffective assistance of counsel. We now turn to the merits of Mr. Reyna's appeal.

¶ 15    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a criminal defendant with a mechanism, where he or she can argue that his or her sentence and conviction were the result of a substantial denial of his or her constitutional rights under the United States Constitution, Illinois Constitution, or both. *People v. English*, 2013 IL 112890, ¶ 21. A postconviction proceeding is not an appeal from the judgment, but rather, it is a collateral attack on the trial court proceedings. *English*, 2013 IL 112890, ¶ 21. To receive postconviction relief, a defendant must show a substantial deprivation of his or her federal or state constitutional rights in the trial court proceedings, which produced the challenged judgment. *English*, 2013 IL 112890, ¶ 21. Additionally, issues that could have been raised on direct appeal but were not raised are forfeited. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). However, this forfeiture rule does not apply to claims regarding the constitutionality of a defendant's imprisonment when he or she does not file a direct appeal. *Rose*, 43 Ill. 2d at 279 (1969).

¶ 16    A postconviction proceeding operates in three stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). In the first stage, taking the allegations as true, the trial court must, within 90 days,

independently review the petition and determine whether the petition is frivolous or patently without merit and whether it presents a gist of a constitutional claim. *Hodges*, 234 Ill. 2d at 10. If the court determines that the petition is patently without merit or frivolous, the court must dismiss the petition in a written order. *Hodges*, 234 Ill. 2d at 10. A petition is deemed frivolous or patently without merit if the petition has no arguable basis in law or fact. *Hodges*, 234 Ill. 2d at 11-12. The review of a first-stage dismissal of a postconviction petition is *de novo*. *People v. Delton*, 227 Ill. 2d 247, 255 (2008).

¶ 17    To present a gist of a constitutional claim, a defendant need only "present a limited amount of detail." *Delton*, 227 Ill. 2d at 254. However, this should not be misunderstood to mean that a defendant does not need to provide any factual detail. *Delton*, 227 Ill. 2d at 254. While a petitioner is not required to provide a complete factual recitation, he or she must set forth "some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *Delton*, 227 Ill. 2d at 254-55. As such, the failure to attach necessary affidavits, records, or other evidence or explain their absence is fatal to the petition and is grounds for summary dismissal. *Delton*, 227 Ill. 2d at 255. When the necessary supporting affidavit in a petition alleging ineffective assistance of counsel would be required from the very counsel against whom the petition is asserted, a defendant is not required to attach the affidavit to the petition. *People v. Williams*, 47 Ill. 2d 1, 4 (1970).

¶ 18    Ordinarily, a defendant is required to file a supporting affidavit or other evidence attached to a postconviction petition in order to survive summary dismissal. See *Delton*, 227 Ill. 2d at 254-55 (the failure to provide supporting evidence to corroborate a defendant's postconviction petition is fatal). In this case, Mr. Reyna did not attach any supporting affidavits or evidence to his petition.

However, since the appropriate affidavit would necessarily come from his trial counsel, he was not required to attach the affidavit at that stage of the proceedings in order to survive summary dismissal. See *Williams*, 47 Ill. 2d at 4 (the requirement for attaching an affidavit to a postconviction petition is relaxed when the needed affidavit would necessarily come from trial counsel). Accordingly, the scope of our review is to consider whether the postconviction petition before us is frivolous or patently without merit.

¶ 19  The crux of Mr. Reyna's argument is that he was highly intoxicated on PCP and alcohol at the time of the stabbings, and thus, he had a valid voluntary intoxication defense that his trial counsel failed to investigate, thereby providing ineffective assistance. Notably, it is not apparent from the face of his postconviction petition that Mr. Reyna's ineffective assistance of counsel claim is based on counsel's failure to raise the defense of voluntary intoxication. Nevertheless, for the sake of his argument, we will liberally construe his petition as arguing this point, since it does not change the outcome of our analysis regarding the viability of his petition.

¶ 20  A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Petrenko*, 237 Ill. 2d at 496 (2010). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 21  To establish deficient performance, the defendant must show that his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194,

219 (2004) (citing *Strickland*, 466 U.S. at 687). " 'Effective assistance of counsel refers to competent, not perfect representation.' " *Evans*, 209 Ill. 2d at 220 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988).

¶ 22    To establish the prejudice prong of *Strickland* in a case where a defendant has entered a guilty plea, he or she must show that, but for trial counsel's errors, there is a reasonable probability that the defendant would not have pled guilty and would have instead gone to trial. *People v. Hatter*, 2021 IL 125981, ¶ 26. In essence, a defendant must show that he or she would have been better off going to trial. *Hatter*, 2021 IL 125981, ¶ 26. As a result, courts have required a defendant to present "a claim of innocence or a plausible defense to establish prejudice." *Hatter*, 2021 IL 125981, ¶ 26.

¶ 23    In his argument, Mr. Reyna concedes voluntary intoxication has not been recognized as an affirmative defense by Illinois courts since 2002. Nevertheless, he cites to Illinois legislative history in support of his argument that voluntary intoxication could be introduced to disprove the *mens rea* or mental state necessary for conviction. Despite his concession that the law as to that defense changed in 2002, in support of this nuanced argument, Mr. Reyna only cites case law prior to 2002. First, we will address Mr. Reyna's reliance on legislative history.

¶ 24    The primary objective of statutory construction is to discern the legislature's intent, and the best way to ascertain that intent is the plain language of the statute. *People v. Gutman*, 2011 IL 110338, ¶ 12. When the statutory language is ambiguous, a court may use other interpretive aids such as legislative history to resolve the ambiguity. *In re Detention of Powell* 217 Ill. 2d 123, 135

(2005). However, where the statute is clear and unambiguous, courts *may not* resort to aids of statutory construction. (Emphasis added.) *Powell* 217 Ill. 2d at 135.

¶ 25    The statute in question is section 6-3 of the Criminal Code of 1961 (Code) (720 ILCS 5/6-3 (West 2018)), which as of January 1, 2002 states, "[a] person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." The plain language of the statute clearly states that intoxication is only a defense if it is involuntary *and* deprives the defendant of the necessary mental state or capacity for the crime. This language is clear and unambiguous. Our reading of the statute finds further support when looking at the language of the statute prior to its 2002 amendment. Prior to the amendment, section 6-3 of the Code (720 ILCS 5/6-3 (West 2000)) stated:

> "[a] person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:
>
>      (a) Is so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense; or
>
>      (b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

The removal of the language discussing the extreme nature of a defendant's intoxication shows the legislature's intent to remove voluntary intoxication as a defense to a crime or charged offense. The Fourth District of the Illinois Appellate Court stated the same in *People v. Jackson*, 362 Ill. App. 3d 1196, 1201. In that case, the court, looking at section 6-3 of the Code, held that as

of January 1, 2002, "Illinois no longer recognized voluntary intoxication as an excuse for criminal conduct." *Jackson*, 362 Ill. App. 3d at 1201. Mr. Reyna does not allege that he was involuntarily intoxicated and there is nothing in the record to support such a contention. Given the unambiguous nature of the language of the statute, we decline Mr. Reyna's invitation to review the legislative history of the statute in question. As noted, Mr. Reyna would not have had a viable defense of voluntary intoxication to the charged offenses of attempted murder, aggravated domestic battery, nor aggravated battery. Consequently, his trial counsel's performance was not deficient, and Mr. Reyna did not receive ineffective assistance of counsel when his counsel did not investigate a nonviable defense. Thus, his argument in his postconviction petition had no basis in law or fact and was properly dismissed at the first stage by the trial court on those grounds. See *Hodges*, 234 Ill. 2d at 11-12 (a petition should be dismissed as frivolous or without merit if it has no arguable basis in law or in fact). We accordingly affirm the trial court's summary dismissal of Mr. Reyna's postconviction petition.

¶ 26                                            CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.